IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RACHEL B.,**

  **Plaintiff,**

 v.

**COMMISSIONER OF
SOCIAL SECURITY,**

  **Defendant.**

Civil Action 2:23-cv-003
**Chief Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Plaintiff, Rachel B., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 8). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I. BACKGROUND**

Plaintiff filed her applications for DIB on December 29, 2020, and for SSI on December 30, 2020, alleging that she has been disabled since July 1, 2019, due to depression, anxiety, psoriatic arthritis, peripheral neuropathy, scar tissue around a nerve causing numbness and pain, and herniation at T1-T12. (R. at 593-606, 627.) Plaintiff's applications were denied initially in February 2021 and upon reconsideration in May 2021. (R. at 440-96, 506-15.) Plaintiff sought a

*de novo* hearing before an administrative law judge. (R. at 516-17.) On December 9, 2021, administrative law judge M. Drew Crislip (the "ALJ") held a hearing, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 265-313.) A vocational expert and two medical experts also appeared by telephone and testified at the hearing. (*Id.*) On February 8, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 135-67.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.)

II.  **RELEVANT RECORD EVIDENCE**

The Court has thoroughly reviewed the transcript, including Plaintiff's medical record, function and disability reports, and testimony about his conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite it as necessary in the discussion of the parties' arguments below.

III. **ADMINISTRATIVE DECISION**

On February 8, 2022, the ALJ issued his decision. (R. at 135-67.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2022. (R. at 141.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

not engaged in substantially gainful activity since July 1, 2019, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following impairments that either singularly and/or in combination are severe:  degenerative disc disease of the cervical and lumbar spine, diabetes mellitus, psoriatic arthritis, obesity, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder (ADHD). (*Id.*)  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 143.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform a range of sedentary work. More specifically, [Plaintiff] can lift, carry, push and/or pull 10 pounds occasionally and less than 10 pounds frequently. She can sit for six hours in an eight-hour workday. She can stand and/or walk for two hours in an eight-hour workday. She must be allowed to alternate from sitting to standing or walking for two to three minutes after every hour and from standing or walking to sitting for two to three minutes after every half-hour, always with the capacity to remain on task during position changes, some of which will be covered by typical work breaks or time off task; in this regard, [Plaintiff], beyond those breaks, will be off task five percent of the time in an eight-hour workday. [Plaintiff] can frequently stoop. She can occasionally operate foot controls, reach overhead, climb ramps and stairs, balance (i.e., navigate uneven or slippery terrain), and kneel. She should never climb ladders, ropes or scaffolds, crouch or crawl. [Plaintiff] can never work at unprotected heights or in proximity to moving mechanical parts of dangerous machinery. She should never operate a motorized vehicle. [Plaintiff] can occasionally work in weather, in humidity and wetness, and in pulmonary irritants. [Plaintiff] can never work in temperature extremes of cold or hot, in vibration, or in noise above the moderate level. She should have no exposure to flashing, glaring or strobing lights although typical office fluorescent lights are endurable without restriction. Lastly, due to

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> mental-health symptoms as well as distractions of physical symptoms, there should be no high production rate or fast paced work; no complex tasks; and no expectation that she adapt to the performance of new and unfamiliar tasks as primary work duties without orientation (i.e., she is not a self-starter).

(R. at 146-47.) At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as an office clerk and maintenance worker, social series worker, administrative manager, case aide, recreational aide or food service manager. (R. at 157-58.) Relying on the VE's testimony, the ALJ concluded at step five that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as an inspector, surveillance system monitor, or product loader. (R. at 158-59.) He therefore found that Plaintiff was not disabled under the Social Security Act at any time since July 1, 2019. (R. at 159.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**V.  ANALYSIS**

In his Statement of Errors, Plaintiff asserts that the ALJ committed error when weighing the October 13, 2021 Neurology Specialist Medical Statement (hereafter, the "Opinion") from Plaintiff's neurologist George Shokri, M.D. (ECF No. 11 at PAGEID ## 4180-4185.) For the reasons discussed below, the Undersigned disagrees.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The governing regulations[2] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5);

---

[2] Plaintiff's applications were filed after March 27, 2017. (R. at 593-606.) Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

416.913(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

6

opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors.  20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3).  In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above.  20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).  Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. §§ 404.1520c(d); 416.920c(d).

7

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

Against that background, the ALJ discussed Dr. Shokri's treatment and opinions as follows:

> *** [Dr. Shokri] initially consulted with [Plaintiff] on February 4, 2021, with a follow-up examination occurring on May 10, 2021. [Plaintiff] had complaints such as foot/calf numbness and tingling since 2018, leg weakness and atrophy, some hand tingling worse when putting pressure on the elbows, but no hand weakness. However, her subjective complaints were not borne out on objective examination. Other than an obese body habitus, with BMIs of 40 and 39.2, examinations were fully benign and within normal limits throughout.
>
> ***

> On December 13, 2021, George Shokri, MD provider an assessment for [Plaintiff]. He stated that she would need unscheduled breaks, although he could not opine on the frequency or duration of such breaks. He said [Plaintiff] could perform grasping and fine manipulation 15% of a day, and reach 10% of a day. He said she would likely to be off task 25% or more of the time and absent more than four days per month. He assessed the earliest date of symptoms/limitations as October 10, 2018. **Dr. Shokri's assessment is not persuasive. It is without support from his own records which included essentially benign examination findings throughout.** This includes but is not limited to no objective support for the substantial and grossly overestimated limitation in activities of grasping, fine manipulation, and reaching. **The assessment is speculative in large part, further detracting from its persuasiveness. In addition, the assessment was vague in part, such as unscheduled breaks without specified frequency or duration. Overall, Dr. Shokri's assessment is without substantial support from the record as a whole and not persuasive.**

(R. at 151, 155 (internal citations omitted; emphasis added).)

Plaintiff takes issue with multiple elements of the ALJ's analysis. First, Plaintiff argues that "[i]t is not understood what the ALJ meant" when the ALJ described Dr. Shokri's opinions as "speculative," and the ALJ only used such language "as a means to find Dr. Shokri's opinions less persuasive." (ECF No. 11 at PAGEID # 4182.) Next, Plaintiff takes aim at the ALJ's failure to provide consistent citations for his conclusions, arguing that "[i]f Dr. Shokri's opinions were not supported and inconsistent with the record, the ALJ should have at least attempted to point to something, anything in the record that would have supported that conclusion." (*Id.*) Finally, Plaintiff argues that the ALJ improperly rejected Dr. Shokri's opinion that Plaintiff would need additional unscheduled breaks by simply describing it as "vague" instead of by discussing whether it was supportable or consistent, as the regulations require. (*Id.* at PAGEID # 4183.) In sum, and to this end, Plaintiff appears to believe that the ALJ reverse-engineered an adverse finding, arguing that "the ALJ found it easier to reject [Dr. Shokri's] opinions by providing some analysis that did not properly consider the supportability and consistency factors." (*Id.* at PAGEID # 4185.)

9

In response, the Commissioner argues that "the ALJ properly found Dr. Shokri's opinion not persuasive" because it was "not supported by Dr. Shokri's own records" and because it was "without substantial support from the record as a whole." (ECF No. 13 at PAGEID ## 4194-4198.) The Commissioner submits that "Dr. Shokri's own records . . . included essentially benign examinations findings throughout including no objective support for the substantial and grossly overestimated limitation in activities of grasping, fine manipulation, and reaching." (*Id.* at PAGEID # 4195.) The Commissioner also refutes Plaintiff's position that the ALJ did not cite to specific findings by noting that "Plaintiff's argument ignores the ALJ's earlier discussion of the doctor's treatment notes," arguing that the ALJ "was not required to repeat this analysis." (*Id.*)

As for whether the ALJ properly discussed the consistency factor, the Commissioner argues that the ALJ "properly found that the proposed limitations were not supported by the record as a whole," citing a discussion in the ALJ's decision in which the ALJ explained that Plaintiff's "clinical findings were largely benign with no significant and persistent upper or lower extremity weakness, abnormal ranges of motion, widespread sensory or reflex deficits, imbalance, incoordination, muscle atrophy, clonus fasciculation, or immobility or inability to ambulate independently and effectively." (*Id.* at PAGEID # 4196 (internal citations omitted).) The Commissioner then concludes by arguing that "[t]o the extent that Plaintiff points to some abnormal findings or diagnoses in the record that could support further restrictions . . . this Court should defer to the ALJ's even if there is substantial evidence in the record that would have supported an opposite conclusion." (*Id.* at PAGEID # 4198.) Plaintiff did not file a Reply brief, so the matter is ripe for judicial decision.

Plaintiff's assignment of error is not taken. As a preliminary matter, the Court rejects Plaintiff's contention that "the ALJ failed to cite to any part of the record that actually supported [the ALJ's] theory" that Dr. Shokri's own findings were inconsistent with or unsupportive of his opinions. (ECF No. 11 at PAGEID # 4182.) While the ALJ did not cite any records in her immediate discussion of Dr. Shokri's opinion, the rest of the ALJ's opinion clearly cites the records on which the ALJ relies to conclude that Dr. Shokri's opinion is both "without support from his own records" (which goes to the supportability factor) and "without substantial support from the record as a whole" (which goes to the consistency factor). Regarding the supportability factor, for example, the ALJ first cited Dr. Shokri's progress notes from both of Plaintiff's February 4, 2021 and May 10, 2021 examinations, during which Dr. Shokri reported exclusively normal or negative findings. (R. at 2668-2672; 2683-2687.) Unsurprisingly, and reasonably, this led the ALJ to observe that Plaintiff's "subjective complaints were not borne out on objective examination," (R. at 151.) This sufficiently laid the groundwork for the ALJ to later conclude that Dr. Shokri's opinion was "without support from his own records which included essentially benign examination findings throughout." (R. at 155.) The Undersigned therefore finds no error with the ALJ's discussion of the supportability factor.[3]

The same holds true for the ALJ's discussion of the consistency factor. On this point, Plaintiff rests on a red herring argument, which is that "[o]ther medical records supported and were consistent with Dr. Shokri's opinions." (ECF No. 11 at PAGEID ## 4184-4185.) That is

---

[3] For these reasons, the Undersigned also disagrees that "[i]t is not understood what the ALJ meant" when the ALJ characterized Dr. Shokri's opinion as "speculative." (ECF No. 11 at PAGEID # 4182.) This comment, which the Undersigned notes that the ALJ only made in passing, clearly relates to the dissonance between Dr. Shokri's "essentially benign" examination findings and his opinion. (R. at 155.)

not the question before the Court. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted). Instead, the Court looks at whether substantial evidence supports the ALJ's finding. And here it does, as the ALJ cited numerous records throughout the record which supported his conclusion that Dr. Shokri's opinion was "without substantial support from the record as a whole." First, for example, the ALJ cited Plaintiff's "largely benign" clinical findings in Plaintiff's neurology records, which lacked any "significant [or] persistent upper or lower extremity weakness, abnormal range of motion, widespread sensory or reflex deficits, imbalance, incoordination, atrophy, clonus, fasciculation, immobility[,] or inability to ambulate independently and effectively." (R. at 142-143 (citing R. at 692-750, 1468-1583, 2291-2500, 2668-2687, 2717-2752, 2779-2810, 2973-2984, 3922-3943, 3995-4060).) These objective findings are directly in conflict with the "symptoms and signs" indicated by Dr. Shokri in his Opinion, which included but were not limited to paresthesia; weakness; sensory loss; decreased deep tendon reflexes; cramping, burning calves & feet; and muscle atrophy. (R. at 3916.) Given this conflict, which the ALJ affirmatively recognized and discussed, the Undersigned also finds no error with the ALJ's analysis of the consistency factor – regardless of whether the ALJ *could have* concluded otherwise.

   To be clear, while Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his RFC determination, and the ALJ's explanation enjoys substantial support in the record. *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020)

(citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")). The Undersigned must therefore defer to the ALJ's decision. Accordingly, Plaintiff's assignment of error is not well taken.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: December 18, 2023**              */s/ Elizabeth A. Preston Deavers*
                                                                                  **ELIZABETH A. PRESTON DEAVERS**
                                                                                 **UNITED STATES MAGISTRATE JUDGE**