IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RACHEL B.,**

    **Plaintiff,**

    v.

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

Case No. 2:23-cv-003
**CHIEF JUDGE ALGENON L. MARBLEY**
Magistrate Judge Deavers

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Objections (ECF No. 15) to the Magistrate Judge's December 18, 2023, Report and Recommendation (ECF No. 14), recommending that this Court overrule the Plaintiff's Statement of Errors (ECF No. 11) and affirm the Commissioner's decision. The Commissioner has filed a response. (ECF No. 16). Following *de novo* review by this Court, Plaintiff's Objections are hereby **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's Report and Recommendation. Accordingly, the Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

Plaintiff Rachel B. filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability since July 1, 2019, due to depression, anxiety, psoriatic arthritis, peripheral neuropathy, scar tissue around a nerve causing numbness and pain, and herniation at T1-T12. (R. 593-606, 627). Those applications were denied in a February 8, 2022, decision by an administrative law judge ("ALJ"), (R. 135-67), following a hearing (R. 265-313.)

In concluding that Plaintiff was not disabled within the meaning of the Social Security Act from Plaintiff's alleged disability onset date of July 1, 2019, through the date of the ALJ's decision, the ALJ followed the required five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920.[1] In his

---

[1] The five-step sequential evaluation process requires consideration of the following:
   1. Is the claimant engaged in substantial gainful activity?

decision, the ALJ found that Plaintiff met the insured status requirements for DIB through June 30, 2022, and that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (R. 141.) The ALJ also found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, diabetes mellitus, psoriatic arthritis, obesity, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder are severe impairments, (*id*.), but that her impairments, considered singly or in combination, neither met nor equaled a listed impairment. (R. 143.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") for a limited range of sedentary work, as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform a range of sedentary work. More specifically, [Plaintiff] can lift, carry, push and/or pull 10 pounds occasionally and less than 10 pounds frequently. She can sit for six hours in an eight-hour workday. She can stand and/or walk for two hours in an eight-hour workday. She must be allowed to alternate from sitting to standing or walking for two to three minutes after every hour and from standing or walking to sitting for two to three minutes after every half-hour, always with the capacity to remain on task during position changes, some of which will be covered by typical work breaks or time off task; in this regard, [Plaintiff], beyond those breaks, will be off task five percent of the time in an eight-hour workday. [Plaintiff] can frequently stoop. She can occasionally operate foot controls, reach overhead, climb ramps and stairs, balance (i.e., navigate uneven or slippery terrain), and kneel. She should never climb ladders, ropes or scaffolds, crouch or crawl. [Plaintiff] can never work at unprotected heights or in proximity to moving mechanical parts of dangerous machinery. She should never operate a motorized vehicle. [Plaintiff] can occasionally work in weather, in humidity and wetness, and in pulmonary irritants. [Plaintiff] can never work in temperature extremes of cold or hot, in vibration, or in noise above the moderate level. She should have no exposure to flashing, glaring or strobing lights although typical office fluorescent lights are endurable without restriction. Lastly, due to mental-health symptoms as well as distractions of physical symptoms, there should be no high production rate or fast paced work; no complex tasks; and no expectation that she adapt to the performance of new and unfamiliar tasks as primary work duties without orientation (i.e., she is not a self-starter).

(R. 146-47.) The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work. (R. 157-58.) Relying on the testimony of the vocational expert, however, the ALJ also found that Plaintiff could perform other jobs that exist in significant numbers in the national economy despite her

---

2. Does the claimant suffer from one or more severe medically determinable impairments?
3. Do the claimant's impairments, considered singly or in combination, meet or equal any impairment listed in 20 C.F.R. Part 404, Subpt. P, App'x 1?
4. Does the claimant's residual functional capacity preclude the performance of the claimant's past relevant work?
5. If so, and considering the claimant's residual functional capacity and vocational profile, can the claimant perform other work that exists in significant numbers in the national economy?

lessened capacity. (R. 158-59.) The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time since her alleged disability onset date of July 1, 2019. (R. 159.).

The decision of the ALJ became final when the Appeals Council declined review (R. 1-7.). Plaintiff timely filed this appeal from that decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court, upon objection, is required to "make a *de novo* determination of those positions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). This Court's review is "limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Substantial evidence constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). The findings of the Commissioner are not subject to reversal merely because there also exists in the record substantial evidence to support a different conclusion. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). *See also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

3

Moreover, the ALJ's findings must not only enjoy substantial support in the record, but those findings must also be sufficiently articulated to permit meaningful review of those findings. *Bailey v. Comm'r of Soc. Sec.*, 174 F.3d 428 (Table), 1999WL 96920, at *4 (6th Cir. Feb. 2, 1999) (The ALJ's decision "must articulate with specificity reasons for the findings and conclusions that he or she makes.") (citing *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)).

Yet, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013).

### III.   DISCUSSION

In her Statement of Errors, (ECF No. 11), Plaintiff argued that the ALJ's RFC determination lacks substantial support in the record because the ALJ erred in his evaluation of the opinion of Plaintiff's treating neurologist, George Shokri, M.D. (*Id*. at PageID# 4180.)

Dr. Shokri first saw Plaintiff in February 2021 for complaints of pain and numbness in her legs and feet. (R. 2683.) An EMG confirmed sensorimotor polyneuropathy. (*Id*.) On examination, Dr. Shokri found "NEURO: Normals – Alert" and her reflexes were intact. (R. 2686.) At a May 2021 office visit, Plaintiff again complained of numbness and tingling "all over her feet" and "a little bit" in her hands. (R. 2688-89.) Dr. Shokri again noted findings on examination of "NEURO: Normals – Alert" and intact reflexes. R. 2691.) On October 13, 2021, Dr. Shokri completed a medical source statement in which he diagnosed sensorimotor polyneuropathy, cervical spondylosis, and compression neuropathy. (R. 3916.) Plaintiff's symptoms consisted of pain, paresthesias, weakness, sensory loss, decreased deep tendon reflexes, chronic fatigue, cramping, and muscle atrophy. (*Id*.) Dr. Shokri opined that Plaintiff would need to take unscheduled

4

breaks during the day because of muscle weakness, pain, and chronic fatigue, that she would have significant reaching, handling, and fingering problems due to numbness, sensory loss, pain, and muscle weakness, and that she would miss more than four days of work per month. (R. 3916-17.)

As noted, Plaintiff complains that the ALJ erred in his evaluation of Dr. Shokri's opinion. For claims filed after March 27, 2017,[2] the applicable regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c); 416.920c.

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions . . . are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a); 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1); 416.920c(c).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical

---

[2] As previously noted, Plaintiff filed her claims in December 2020.

5

sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2); 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate, *inter alia*, his "consideration of medical opinions" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions… in [the claimant's] case record." *Id*. at §§ 404.1520c(b); 416.920c(b).

The ALJ in this case found Dr. Shokri's opinion "not persuasive." (R. 155.) The ALJ specifically found that the doctor's opinion was not supported by his own treatment notes, which documented only benign findings, was "speculative," and was inconsistent with and "without substantial support from the record as a whole...." (*Id*.) The Magistrate Judge concluded that the ALJ's evaluation of this opinion satisfied the applicable regulations and enjoyed substantial support in the record, notwithstanding Plaintiff's reference to other records that might support a contrary conclusion. Report and Recommendation (ECF No. 14, PageID# 4210-11 (citing *Nash v. Comm'r of Soc. Sec*., No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.")).

Plaintiff objects to that conclusion, noting that Plaintiff complained of numbness and tingling in her hands and feet during both her office visits with Dr. Shokri; she also points to an EMG study indicative of mild distal generalized sensory polyneuropathy and mild median nerve compression at the right wrist. According to Plaintiff, '[t]hese findings supported Dr. Shokri's opinions." Objections (ECF No. 15, at PageID# 4216.) The ALJ acknowledged this evidence, (R. 142), but—after an exhaustive review of the entire medical record—also noted:

> Objective clinical findings, both prior to and during the period at issue including within neurology records, were largely benign, including but not limited to no significant and persistent upper or lower extremity weakness, abnormal range of motion, widespread sensory or reflex deficits, imbalance, incoordination, atrophy, clonus, fasciculation, immobility or inability to ambulate independently and effectively (See e.g., Exhibits B2F, B5F, B8F, B10F, B13F, B16F, B25F, B37F, and B44F).

(R. 142-43.) This Court concludes, as did the Magistrate Judge, that the ALJ's evaluation of Dr. Shokri's opinion complied with the applicable regulations and enjoys substantial support in the record. Under these circumstances, the Court will defer to that evaluation and to the conclusion of the Commissioner.

## IV. CONCLUSION

Accordingly, the Court concludes that the Magistrate Judge did not err in recommending affirmance of the decision of the Commissioner. Furthermore, this Court's independent review of the ALJ's findings and conclusions, and of the entire record, convinces this Court that the Commissioner's decision enjoys substantial support and complied with all applicable standards.

Plaintiff's Objection to the Report and Recommendation (ECF No. 15) is therefore **OVERRULED**. The Court hereby **ADOPTS** the Report and Recommendation (ECF No. 14) and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g), and to thereupon terminate this case from the active docket of this Court.

_____
**ALGENON L. MARBLEY, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

**DATED: March 14, 2024**